# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-05-00348-CR

**Donald Alan Fair, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF BELL COUNTY, 27TH JUDICIAL DISTRICT
### NO. 57,224, HONORABLE JOE CARROLL, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Donald Alan Fair appeals his conviction for murder. *See* Tex. Pen. Code Ann. § 19.02 (West 2003). Following a jury trial, the district court assessed punishment at life in prison. In two issues, appellant contends that: (i) the trial court's failure to find at the punishment stage that he acted with sudden passion was against the great weight of the evidence; and (ii) he was denied effective assistance of counsel. We affirm the judgment of conviction.

## FACTUAL BACKGROUND

On November 4, 2004, appellant was arrested by officers of the Temple Police Department in response to a 911 emergency call. Appellant lived in an apartment with his sixteen-year-old girlfriend Danielle Knight and her father, Richard Terrence Knight ("Knight"). No one was employed, and all three lived off the royalties Knight received as a former manager and music

producer. Knight was a sixty-two-year-old diabetic who was unable to drive and could not walk very well. Earlier that day, Danielle and appellant argued over methamphetamine. Appellant called the police claiming that Knight fit the description of a wanted child molester. After the officer determined the call to be false, he counseled the three people, who were all "calm" at that time, and left.

Later that evening, Danielle and appellant began to fight again in a more physical manner. After some discussion among the three, during which appellant sat in a dark bathroom where he kept his hunting knife in an ammunition box, Danielle and her father decided that she should go to her mother's home to prevent more fighting. As Danielle began to leave, appellant kicked her and then dragged her to the bedroom to prevent her from leaving. At this point, her father intervened and pushed appellant away from Danielle. A shoving match ensued, and Knight punched appellant in the chest and face. Appellant knocked Knight to the floor, held his arms above his head, and began to punch him. Knight begged appellant to stop, but appellant continued to punch him. Knight then screamed, and Danielle noticed that appellant's knife was lodged in her father's stomach. At trial, Danielle testified that appellant "just kept stabbing" her father. As appellant continued to stab her father, Danielle called 911. She then hit appellant with the telephone, grabbed a knife from the kitchen, and ran to a neighbor's door. Appellant pursued Danielle, but the neighbor let her inside where they called the police. Appellant banged on the neighbor's door, calling Danielle's name, and then left.

While searching for the correct apartment building in response to the 911 call, an officer found appellant hiding in the bushes on the property of the apartment complex. Appellant was carrying a knife with blood on it, and the officer saw blood on appellant's hands. Appellant

2

would not cooperate until the officer drew his weapon. Appellant was arrested and was combative throughout the arrest, trying at one point to escape. The officers who arrested appellant believed that he was under the influence of a controlled substance such as methamphetamine. He screamed periodically, and at one point said, "That son of a bitch deserved it, the fucking child molester!" When asked who he was talking about, appellant answered, "Terrence Knight."

The police found Knight on the floor of his apartment. After the officers and EMS personnel unsuccessfully attempted to resuscitate him, they transported Knight to a hospital where he was pronounced dead.

The court's jury charge at the guilt or innocence phase of the trial included appellant's request for a self-defense instruction. The jury was also instructed that voluntary intoxication is not a defense. The jury found appellant guilty of murder. Appellant asked the court to assess punishment and, after receiving additional evidence, the court sentenced him to life imprisonment at the Texas Department of Criminal Justice, Institutional Division. This appeal followed.

**ANALYSIS**

Appellant first contends that, at the punishment stage, the district court should have found *sua sponte* that he acted under the influence of sudden passion, a finding that would have reduced the range of punishment to which he was exposed. We disagree.

A person commits the offense of murder if he intentionally or knowingly causes the death of an individual, or intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual. Tex. Pen. Code Ann. § 19.02(b)(1)-(2) (West 2003). At the punishment phase of trial, a defendant may raise the issue of whether he caused the

3

death under the immediate influence of sudden passion arising from adequate cause. *Id*. § 19.02(d). "Sudden passion" means passion directly caused by and arising out of provocation by the individual killed or another acting with the person killed that arises at the time of the offense and is not solely the result of former provocation. *Id*. § 19.02 (a)(2). It is not enough that the defendant act with "sudden passion"; the "sudden passion" must arise from "adequate cause." *See id*. § 19.02(d). "Adequate cause" is cause that would commonly produce a degree of anger, rage, resentment, or terror in a person of ordinary temper, sufficient to render the mind incapable of cool reflection. *Id*. § 19.02(a)(1). If the defendant proves the issue of sudden passion in the affirmative by a preponderance of the evidence, the offense of murder is reduced from a first degree felony to a second degree felony. *Id*. § 19.02(d); *see also Hernandez v. State*, 127 S.W.3d 206, 211-12 & n.1 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd) (defendant bears burden at punishment phase of trial to prove issue of sudden passion by preponderance of the evidence).

Appellant argues that the district court should have *sua sponte* considered a sudden passion mitigation and assessed punishment at the lower range provided. This contention is not supported by current Texas law. Sections 19.02 and 19.04 of the penal code are the statutory provisions governing murder and manslaughter. *See* Tex. Pen. Code Ann. §§ 19.02, .04 (West 2003). These sections were amended effective September 1, 1994.[1] Before the 1994 amendments, a defendant was entitled to a jury charge on the lesser-included offense of voluntary manslaughter if evidence was presented from which the jury could find that the defendant caused the death of an

---

[1] *See* Act of May 29, 1993, 73d Leg., R.S., ch. 900, § 1.01, 1993 Tex. Gen. Laws 3586, 3613-14.

4

individual under circumstances that would constitute murder under section 19.02, except that the defendant caused the death under the immediate influence of sudden passion arising from adequate cause. *See Moore v. State*, 969 S.W.2d 4, 10 (Tex. Crim. App. 1998). Thus, sudden passion was a guilt/innocence issue. *See Sanchez v. State*, 23 S.W.3d 30, 34 (Tex. Crim. App. 2000). As a result of the 1994 amendments, for any homicide committed after August 31, 1994, a jury no longer has the option of finding the defendant guilty of the lesser-included offense of voluntary manslaughter. *Id.* Now, if a defendant is convicted of murder, he may argue at the punishment phase that he caused the death while under the immediate influence of sudden passion arising from adequate cause. A defendant "may raise" the issue of "sudden passion" only during the punishment phase of the trial. Tex. Pen. Code Ann. § 19.02(d); *see Wesbrook v. State*, 29 S.W.3d 103, 113 n.7 (Tex. Crim. App. 2000); *Sanchez*, 23 S.W.3d at 34.

For sudden passion mitigation to apply, the defendant at the punishment phase must (i) raise the issue as to whether he caused the death under the immediate influence of sudden passion arising from adequate cause and (ii) prove the issue in the affirmative by a preponderance of the evidence. Tex. Pen. Code Ann. § 19.02(d); *see also Trevino v. State*, 100 S.W.3d 232, 238 (Tex. Crim. App. 2003) (assuming defendant requests charge, charge must be given if "evidence raises the issue"). Appellant failed to meet this burden.

In this case, appellant neither raised the issue of sudden passion, nor did he seek to place the issue before the jury at the punishment phase. Rather, he elected to have punishment assessed by the court, and he did not raise the issue of sudden passion. Appellant relied instead upon the theory that he acted in self-defense and/or that his judgment was impaired because he was under

5

the influence of drugs.  At sentencing, his counsel read a note from appellant seeking forgiveness and apologizing for the "loss."  Appellant stated, "I know being under the influence controlled my actions and that doesn't define a person's true character or reason.  And I do need help.  Once again, I apologize for your loss, ask your forgiveness, and I deserve whatever is coming to me."

Appellant now contends that "the only evidence" before the court supported the sudden passion theory.  Because both the deceased and Danielle struck appellant and appellant stabbed the deceased seventeen times, appellant argues that this is evidence of sudden, uncontrolled anger, rage, or resentment of the type that would give rise to sudden passion mitigation.

Appellant did not testify at trial.  The evidence shows that appellant, Danielle, and the deceased argued and fought over a protracted period of time, and appellant had time to deliberate over his actions.  As a result, the altercation between appellant, Danielle, and the deceased just prior to the stabbing was not an adequate cause which gave rise to an immediate influence of sudden passion.  *See McKinney v. State*, 179 S.W.3d 565, 570 (Tex. Crim. App. 2005).  Appellant caused the conflict by assaulting the teenage daughter of the deceased.  After they shoved each other, the deceased hit appellant with his hand on the upper chest and the face.  The deceased was sixty-two years old and in such poor health that he could not drive or walk properly.  Danielle struck appellant with a telephone as she tried to keep him from stabbing her father.  Danielle and her father were unarmed.  These actions do not rise to the level of adequate cause.  *See id*.  The record contains no evidence to suggest that appellant was incapable of cool reflection.

An instruction on sudden passion is proper only when the sudden passion was directly caused by and arose out of provocation by the deceased at the time of the offense.  *Id*.  Before a

6

defendant is allowed a jury instruction on sudden passion, he must prove that there was an adequate provocation; that passion or an emotion such as fear, terror, anger, rage, or resentment existed; that the homicide occurred while the passion still existed and before there was reasonable opportunity for the passion to cool; and that there was a causal connection between the provocation, the passion, and the homicide. A jury should receive a sudden passion charge if it is raised by the evidence, even if that evidence is weak, impeached, or contradicted. *Trevino*, 100 S.W.3d at 238. However, the evidence cannot be so weak, contested, or incredible that it could not support such a finding by a rational jury. *McKinney*, 179 S.W.3d at 569.

Here, appellant argues that the evidence was so clear that the trial court should have concluded that the preponderance of the evidence showed sudden passion and that the court should have acted upon it without appellant's request to do so. We conclude both that appellant failed to raise the issue and that the evidence is so weak that it could not support such a finding. We overrule appellant's first issue.

In his second issue, appellant contends he was denied effective assistance of counsel because defense counsel did not raise the issue of sudden passion at the punishment phase. *See* Tex. Pen. Code Ann. § 19.02(d). To prevail on an ineffective assistance of counsel claim, an appellant must show that (i) counsel's performance fell below an objective standard of reasonableness, and (ii) a reasonable probability exists that but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). The record must be sufficiently developed to overcome the strong presumption of reasonable assistance. *See Thompson v. State*, 9 S.W.3d 808, 813-14 (Tex. Crim. App. 1999). Generally, a silent record,

7

which provides no explanation for counsel's actions, will not overcome the strong presumption of reasonable assistance. *See Rylander v. State*, 101 S.W.3d 107, 110-11 (Tex. Crim. App. 2003).

In this case, appellant filed a motion for new trial, alleging ineffective assistance of counsel and claiming that his attorney never discussed with him the possibility of raising the issue of sudden passion before the jury or the court. At the hearing on appellant's motion, appellant took the stand for the first time. He testified that he was attacked by the deceased and that he was therefore acting in a state of "rage, resentment, anger or terror." He testified that the fight started when the deceased hit him with his fist, and it was appellant's natural reaction to swing back. After the deceased came at appellant with appellant's own knife, he said that he took the knife away but does not recall what happened afterwards. His defense attorney also testified, acknowledging that 17 stab wounds "indicates" rage:

> Oh, that's rage, but at the same time you had contradicting things. For example, Danielle testified that while he was stabbing her father she tried to intervene by hitting him with the telephone over the head; and that he looked up at her very coldly and without emotion on his face and then went back to the business of stabbing him. Okay? Now is that rage, or is that just being a cold-blooded killer?

Defense counsel also testified that he explored the possible defensive theories, including self-defense, insanity, and sudden passion, with appellant and that appellant insisted on self-defense. Counsel stated that he did not think these defenses would "fly" based on the evidence, and he doubted that the fact finder would find adequate cause or provocation from a situation where the disabled father was intervening to stop a boyfriend from assaulting his sixteen-year-old daughter.

8

Counsel determined that the best approach at the punishment phase was to argue that appellant had made bad decisions due to his use of methamphetamine.

We review the trial court's denial of appellant's motion for new trial for abuse of discretion. *See Charles v. State*, 146 S.W.3d 204, 208 (Tex. Crim. App. 2004). On this record, we cannot say that the trial court abused its discretion in denying the motion for new trial based on ineffective assistance of counsel. The court was able to judge the credibility of the witnesses, and we cannot say that its ruling was arbitrary or unreasonable. *See id*. Since there was no evidence at trial raising the issue of sudden passion, we cannot conclude that trial counsel's performance was deficient for failing to request such an instruction. In light of the record, we cannot say appellant has sustained his burden of showing ineffective assistance on the basis of the failure of counsel to raise sudden passion at the punishment phase. We overrule appellant's second issue.

## CONCLUSION

Having overruled appellant's issues, we affirm the judgment of the trial court.

_____

Jan P. Patterson, Justice

Before Chief Justice Law, Justices Patterson and Pemberton

Affirmed

Filed:   July 21, 2006

Do Not Publish

9