

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 2-08-025-CR

RUBEN JAMES EDWARDS, JR.,                                    APPELLANT
A/K/A RUBEN JAMES EDWARDS

V.

THE STATE OF TEXAS                                                STATE

------------

FROM CRIMINAL DISTRICT COURT NO. 1 OF TARRANT COUNTY

------------

## OPINION

------------

### I. INTRODUCTION

A jury found Appellant Ruben James Edwards, Jr. guilty of the felony offense of indecency with a child by exposure and assessed his punishment at seven years' confinement in the Institutional Division of the Texas Department of Criminal Justice. The trial court sentenced Edwards accordingly, and this appeal followed. In a single issue, Edwards claims that his trial counsel

rendered ineffective assistance of counsel. Based on the standard of review we are required to apply, we will affirm.

## II. FACTUAL AND PROCEDURAL BACKGROUND

About six weeks after Edwards was arrested for the offense, Dr. Barry Norman determined that Edwards was not competent to stand trial. Edwards was committed to North Texas State Hospital, and approximately four months later, on April 23, 2007, his attending physician determined that he was competent to stand trial.

On July 11, 2007, the trial court ordered Edwards to undergo a sanity evaluation. Dr. Kelly Goodness, a clinical and forensic psychologist, prepared a report that Edwards was sane at the time of the offense. On July 30, 2007, Edwards's defense counsel filed with the trial court a written motion requesting that an expert be appointed to conduct a competency exam and specifically requested that Dr. Goodness be appointed to examine Edwards again, this time to determine whether he was competent to stand trial. The record does not reflect whether the trial court granted this motion. Subsequently, on August 21, 2007, defense counsel filed a notice of intent to raise an insanity defense. Defense counsel filed a notice of expert witnesses on October 11, 2007 and listed Dr. Phillip Davis and Dr. Barry Norman as expert witnesses.

2

Edwards's trial began on January 14, 2008. Edwards's defense counsel explained in her opening statement that

> we anticipate that we will bring you experts, without a doubt, that will tell you that Mr. Edwards was insane October 25 of 2006.
>
> . . . .
>
> And we anticipate that our experts will unequivocally indicate to you that he was insane and we anticipate that our expert—that their expert, Dr. Goodness, did not have all the information she needed to make the decision that she made that he was sane.

At trial, Dr. Goodness testified for the State, and Dr. Norman testified for the defense.

In his sole issue on appeal, Edwards claims that defense counsel was ineffective because despite her representations to the jurors that they would hear unequivocal expert testimony that Edwards was insane at the time of the offense, she thereafter presented two expert witnesses who testified that "not only did they have no opinion on the issue, but that they had never even been asked to determine whether Mr. Edwards was insane at that time of the offense." Defense counsel's failure in this regard, claims Edwards, cannot be interpreted as reasonable trial strategy.

### III. STANDARD OF REVIEW

To establish ineffective assistance of counsel, appellant must show by a preponderance of the evidence that his counsel's representation fell below the

3

standard of prevailing professional norms and that there is a reasonable probability that, but for counsel's deficiency, the result of the trial would have been different. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); *Salinas v. State*, 163 S.W.3d 734, 740 (Tex. Crim. App. 2005); *Mallett v. State*, 65 S.W.3d 59, 62–63 (Tex. Crim. App. 2001); *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999).

In evaluating the effectiveness of counsel under the first prong, we look to the totality of the representation and the particular circumstances of each case. *Thompson*, 9 S.W.3d at 813. The issue is whether counsel's assistance was reasonable under all the circumstances and prevailing professional norms at the time of the alleged error. *See Strickland*, 466 U.S. at 688–89, 104 S. Ct. at 2065. Review of counsel's representation is highly deferential, and the reviewing court indulges a strong presumption that counsel's conduct fell within a wide range of reasonable representation. *Salinas*, 163 S.W.3d at 740; *Mallett*, 65 S.W.3d at 63. A reviewing court will rarely be in a position on direct appeal to fairly evaluate the merits of an ineffective assistance claim. *Thompson*, 9 S.W.3d at 813–14. "In the majority of cases, the record on direct appeal is undeveloped and cannot adequately reflect the motives behind trial counsel's actions." *Salinas*, 163 S.W.3d at 740 (quoting *Mallett*, 65 S.W.3d at 63). To overcome the presumption of reasonable professional

4

assistance, "any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness." *Id.* (quoting *Thompson*, 9 S.W.3d at 813). It is not appropriate for an appellate court to simply infer ineffective assistance based upon unclear portions of the record. *Mata v. State*, 226 S.W.3d 425, 432 (Tex. Crim. App. 2007).

The second prong of *Strickland* requires a showing that counsel's errors were so serious that they deprived the defendant of a fair trial, i.e., a trial whose result is reliable. *Strickland,* 466 U.S. at 687, 104 S. Ct. at 2064. In other words, appellant must show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 694, 104 S. Ct. at 2068. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* The ultimate focus of our inquiry must be on the fundamental fairness of the proceeding whose result is being challenged. *Id.* at 697, 104 S. Ct. at 2070.

## IV. RECORD IS INSUFFICIENT TO ESTABLISH INEFFECTIVENESS

The record before us contains no motion for new trial. Although a motion for new trial is not a prerequisite to a successful ineffective assistance of counsel claim, evidence presented at a motion for new trial hearing may offer insight into defense counsel's motives behind her actions and may rebut the

5

strong presumption of reasonable professional assistance. *See Massingill v. State*, 8 S.W.3d 733, 736 (Tex. App.—Austin 1999, pet. ref'd); *see also Robinson v. State*, 16 S.W.3d 808, 809–11 (Tex. Crim. App. 2000) (holding failure to file motion for new trial does not procedurally prohibit appellate claim of ineffective assistance of counsel).

Here, Edwards accurately points out that despite defense counsel's claim to the jury in her opening statement that she would present expert testimony that Edwards was insane at the time of the offense, counsel presented no such testimony. The record reflects, however, that Dr. Barry Norman was called as an expert witness by defense counsel and testified that he had conducted a sanity examination of Edwards in both 2003 and 2006 in connection with other charges against Edwards. Dr. Norman testified that on both occasions he had determined that Edwards was not sane at the time of the charged offenses. Dr. Norman also testified that Edwards had been diagnosed with Persian Gulf War Syndrome, post-traumatic stress disorder, and either bipolar I disorder or schizoaffective disorder bipolar type. He explained that when Edwards was psychotic he did not know right from wrong, did not know what was going on around him, and had general difficulty understanding things. Dr. Norman testified that he had personally observed Edwards in a psychotic episode on more than one occasion.

Defense counsel offered, and the trial court admitted, into evidence a judgment of acquittal in favor of Edwards signed in September 2006; the acquittal was based on Dr. Norman's evaluation that Edwards was not sane at the time of that offense. Defense counsel pointed out during her examination of Dr. Norman that the present "offense is October, one month later almost to the date of that judgment of acquittal."

Defense counsel successfully obtained the admission of defense exhibit number 4—Edwards's records from MHMR of Tarrant County. And defense counsel timely designated Dr. Davis as an expert witness. During trial, while the jury was out, the following exchange occurred:

[Defense Counsel]: Dr. Davis is still in Lubbock. Carol brought me a message that Dr. Davis was still in Lubbock.

THE COURT: We're not stopping.

[Defense Counsel]: I told him that.

THE COURT: Since he got cut loose yesterday and -- there's a nine o'clock flight in Amarillo to DFW on two different airlines.

This is the Dr. Davis that was in Canyon, Texas, yesterday?

[Defense Counsel]: Uh-huh.

THE COURT: And yesterday -- Is that yes?

[Defense Counsel]: Yes, ma'am.

THE COURT: And yesterday the Court in Canyon said that he was cut loose, it was probably two or three in the afternoon, we got the word that he was through.

7

[Defense Counsel]: About three something.

THE COURT: And let me just say, you know, being from Amarillo, there are many flights from Amarillo to Dallas on at least two different airlines in the evening and early evening.

[Defense Counsel]: Yes, ma'am.

THE COURT: So did you have him served with a subpoena in this case?

[Defense Counsel]: Judge, when I spoke with my office --

THE COURT: Just yes or no. Did you ever have him served with a subpoena –

[Defense Counsel]: No.

THE COURT: -- in this case?

[Defense Counsel]: No.

THE COURT: Then I can be no help to you.

Edwards testified that he was a "war vet," that he saw "death threats," "people trying to kill" him, and "Frankenstein and vampires running around." In response to the prosecutor's question of whether he liked to expose himself to people, Edwards said, "I'm sad to say I have nymphoic episodes." Defense counsel successfully obtained an instruction in the court's charge that the jury could find Edwards not guilty of the present offense by reason of insanity.

The court of criminal appeals, in precedent binding on this court, has held that "trial counsel should ordinarily be afforded an opportunity to explain his

8

actions before being denounced as ineffective." *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005) (quoting *Rylander v. State*, 101 S.W.3d 107, 111 (Tex. Crim. App. 2003)).  Absent such an opportunity, an appellate court should not find deficient performance unless the challenged conduct was "so outrageous that no competent attorney would have engaged in it." *Id*. (quoting *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001), *cert. denied*, 537 U.S. 1195, 123 S. Ct. 1351 (2003)).

Here, defense counsel was unable to place *expert* testimony before the jury that Edwards was insane at the time of the present offense.  Her reasons for not issuing a subpoena for Dr. Davis are not apparent from the record; the trial court did not let her explain.  But defense counsel did place evidence before the jury that Edwards had been diagnosed with numerous, severe mental illnesses, had been diagnosed as insane at the time of a previous offense that occurred in 2005 only one month before the present offense, and had experienced multiple psychotic episodes during which time he met the legal definition of insanity.  And defense counsel successfully obtained an instruction in the jury charge authorizing the jury to find Edwards not guilty if they found that he was insane at the time of the present offense.  Based on the record before us, in light of the strong presumption of reasonable professional assistance by defense counsel, and in the absence of any opportunity for

9

defense counsel to explain her motives concerning her words and conduct involving the insanity defense, we cannot say that Edwards has met his burden of showing by a preponderance of the evidence that his counsel's representation fell below the standard of prevailing professional norms. *See Thompson*, 9 S.W.3d at 813; *Randon v. State*, 178 S.W.3d 95, 102–03 (Tex. App.—Houston [1st Dist.] 2005, no pet.); *see also Fox v. State*, 175 S.W.3d 475, 487–88 (Tex. App.—Texarkana 2005, pet. ref'd) (holding that nothing presented for review absent explanation as to why counsel did not present expert testimony); *Teixeira v. State*, 89 S.W.3d 190, 194 (Tex. App.—Texarkana 2002, pet. ref'd) (holding that there must be some showing in the record that expert would have testified in a manner that would have benefitted defendant). We overrule Edwards's sole issue.

## V. CONCLUSION

Having overruled Edwards's sole issue on appeal, we affirm the trial court's judgment.

SUE WALKER
JUSTICE

PANEL: CAYCE, C.J.; DAUPHINOT and WALKER, JJ.

DAUPHINOT, J. filed a dissenting opinion.

PUBLISH

DELIVERED: January 15, 2009

10



# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 2-08-025-CR

RUBEN JAMES EDWARDS, JR.                                    APPELLANT
A/K/A RUBEN JAMES EDWARDS

V.

THE STATE OF TEXAS                                              STATE

------------

FROM CRIMINAL DISTRICT COURT NO. 1 OF TARRANT COUNTY

------------

## DISSENTING OPINION

------------

There is no defensive strategy to explain a defense lawyer's telling the jury that the defendant's defense is insanity and then calling no expert in support of the defense but, rather, calling a witness or witnesses to defeat the defense.  I, therefore, would affirm Appellant's sole point, reverse the trial court's judgment, and remand this case to the trial court for a new trial.

LEE ANN DAUPHINOT
JUSTICE

PANEL:  CAYCE, C.J.; DAUPHINOT and WALKER, JJ.
PUBLISH

DELIVERED: January 15, 2009